# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**VALERIE GATES**                                                                                          **PLAINTIFF**

**v.**                                              **CIVIL ACTION NO. 3:19-CV-758-KHJ-JCG**

**COMMISSIONER OF SOCIAL SECURITY**                                          **DEFENDANT**

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), the claimant Valerie Gates seeks judicial review of the decision of the Commissioner of the Social Security Administration denying her claim for supplemental security income. The Commissioner found that Gates was not disabled, as defined by the Social Security Act, despite her severe impairments of adjustment disorder with mixed disturbance of emotions and conduct, depression, mild intellectual disorder, and intermittent explosive disorder. The Administrative Law Judge (ALJ) determined that Gates had no past relevant work. However, she concluded that work exists in the national economy that Gates could perform. Gates has filed a Motion for Summary Judgment and a Brief in Support. ECF Nos. 11 & 12. The Commissioner has filed a Motion to Affirm and a Brief in Support. ECF Nos. 14 & 15. Having considered the submissions of the parties, the record, and relevant legal authority, the undersigned recommends that Gates' Motion for Summary Judgment be denied, the Commissioner's Motion to Affirm be granted, and the case dismissed.

# I. Background

A. <u>Procedural Background</u>

Gates was 29 years old on November 30, 2016, the date she filed her Title XVI application for supplemental security income. She alleged disability beginning on November 26, 2015. Gates' claims were initially denied on January 23, 2017, and upon reconsideration on May 5, 2017. Gates filed her request for a hearing before an ALJ on May 23, 2017. The ALJ heard Gates' case via video hearing on September 6, 2018. The ALJ heard testimony from Gates as well as from a vocational expert (VE). The ALJ issued a decision unfavorable to Gates on November 16, 2018. ECF No. 10 at 13-22.

B. <u>The ALJ's Findings</u>

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process. See 20 C.F.R § 404.1520. The burden of proving disability rests upon the claimant throughout the first four steps of this process, and if the claimant is successful in sustaining her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). First, the claimant must prove she is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove her impairment is "severe" in that it "significantly limits [her] physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c). At step three, the ALJ must conclude the claimant is disabled if she proves that her impairments meet or are medically equivalent to one of the

impairments listed in Appendix 1 of Subpart P to 20 C.F.R. pt. 404. 20 C.F.R. § 404.1520(d). Accordingly, if a claimant's impairments meet the requisite criteria, that claimant's impairments are of such severity that they would prevent any person from performing substantial gainful activity. 20 C.F.R. § 404.1525.

Fourth, the claimant bears the burden of proving she is incapable of meeting the physical and/or mental demands of her past relevant work. 20 C.F.R. § 404.1520(e). If the claimant is successful at all four of the preceding steps, the burden shifts to the Commissioner at step five to prove, considering the claimant's residual functional capacity (RFC), age, education, and past work experience, that she is capable of performing other work. 20 C.F.R. § 404.1520(g)(1). If the Commissioner proves other work that the claimant can perform exists (in significant numbers in the national economy), the claimant is given the chance to prove that she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

In the instant case, the ALJ found at step one that Gates had not engaged in substantial gainful activity since November 30, 2016, the application date. ECF No. 10 at 15. At step two, the ALJ found that Gates has severe impairments of adjustment disorder with mixed disturbance of emotions and conduct, depression, mild intellectual disorder, and intermittent explosive disorder. *Id.* At step three, the ALJ determined that Gates did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in Appendix 1 to Subpart P of 20 C.F.R. § 404. *Id.*

Next, the ALJ determined that Gates has the RFC to:

> perform a full range of work at all exertional levels but with the following non-exertional limitations: The claimant can understand, remember and carry out simple, short instructions. She can concentrate, persist and maintain pace in order to perform simple, routine, repetitive tasks. Additionally, she can occasionally interact with supervisors, co-workers and the public. Finally, she can adapt to routine changes in the workplace.

*Id.* at 18. At step four, the ALJ concluded that Gates had no past relevant work. *Id.* at 20. The ALJ moved to step five and found that there are jobs that exist in significant numbers in the national economy that Gates could perform. *Id.* The VE testified that an individual of Gates' age, education, work experience, and RFC could work as a floor waxer, a medium, unskilled job with 15,961 jobs in the national economy; a hand packager, a medium, unskilled job with 41,820 jobs in the national economy; and a stuffer, a sedentary, unskilled job with 4,030 jobs in the national economy. *Id.* at 21.

Gates requested review of the ALJ's decision by the Appeals Council on January 11, 2019. *Id.* at 107. The Appeals Council denied her request for review on September 24, 2019, thereby rending the ALJ's decision the final decision of the Commissioner. *Id.* at 4-6. Having exhausted her administrative remedies, Hall commenced the present action on October 24, 2019. ECF No. 1.

## II. Standard of Review

Review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v.*

4

*Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The Court may not reweigh the evidence, try the case *de novo*, or substitute its own judgment for that of the Commissioner, even if it finds that the evidence "preponderates" against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) (quoting *Harrell*, 862 F.2d at 475).

### III. Discussion

Gates alleges one assignment of error: "[t]he ALJ's presumptive disability finding at step 3 of the sequential evaluation of disability is not supported by substantial evidence with respect to Listing 12.05(B)." Specifically, she argues that the ALJ's findings with respect to Listing 12.05(B) are not supported by substantial evidence based on the consideration of her ability to understand, remember, or

5

apply information and her ability to interact with others.

Listing 12.05(B) provides that an intellectual disorder is established if a claimant meets the following criteria:

1. Significantly subaverage generally intellectual functioning evidenced by a or b:

   a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

   b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

   a. Understand, remember, or apply information (see 12.00E1); or

   b. Interact with others (see 12.00E2); or

   c. Concentrate, persist, or maintain pace (see 12.00E3); or

   d. Adapt or manage oneself (see 12.00E4); and

3. The evidence about [the claimant's] current intellectual and adaptive functioning and about the history of [the claimant's] disorder demonstrates or supports the conclusion that the disorder began prior to . . . age 22.

The claimant must "meet *all* of the specified medical criterial. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original).

6

Ultimately, as long as the ALJ's findings with respect to listing 12.05 are supported by substantial evidence, they "will not be disturbed." *McCaskill v. HHS*, No. 1:14-cv-24-HSO-RHW, 2015 WL 1457514, at *9 (S.D. Miss. Mar. 30, 2015) (citing *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001)).

In this case, only Gates' adaptive functioning in the areas of understanding, remembering, or applying information and interacting with others is at issue. The ALJ found that Gates had a moderate limitation in both categories, meaning she had a fair ability to function in these areas independently, appropriately, effectively, and on a sustained basis. In order to show a marked limitation, Gates must show that her functioning in these areas is seriously limited. For an extreme limitation, a claimant is "not able to function in this area independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1 at 12.00(F)(2). The area of understanding, remembering, or applying information refers to a claimant's ability to "learn, recall, and use information to perform work activities." Interacting with others deals with a claimant's ability to "relate to and work with supervisors, co-workers, and the public." 20 C.F.R. Pt. 404, Subpt. P, App. 1 at 12.00(E)(1)-(2). In order to ultimately prevail on her claim, Gates must show that she had marked limitations in both of these categories.

A. <u>Understanding, Remembering, or Applying Information</u>

In the category of understanding, remembering, or applying information, the ALJ noted that although Gates had some difficulties in maintaining her medications, her records indicated medication compliance with regular follow-ups.

7

Further, the ALJ noted that although Gates had an IQ score of 69, largely due to her low score on the perceptual reasoning portion of the test, her scores on most sections of the test were at or near average range. The ALJ concluded that "while the claimant may [have] some limitation with reasoning, she adequately skills in the areas of verbal comprehension, working memory, and processing speed." However, Gates argues that the ALJ failed to fully account for the severity of her intellectual limitations, as determined by Dr. Patricia Sandusky, because her perceptual reasoning score was "exceptionally low. She argues that with such a low reasoning score, her ability to recall information would be of little or no help in the workplace, as she would be unable to apply that information. Plaintiff also points to the fact that she was in special education during third and fourth grade, repeated two grades, and was expelled in eighth grade.

The record also reflects Gates testified that one reason she thinks she is unable to work is because of her attention span. ECF No. 10 at 35-36. However, she testified that she is able to do some household chores, including sweeping, mopping, washing dishes, and doing the laundry. *Id.* at 36. In the initial disability evaluation, Dr. Amy Baskin stated that although Gates would be moderately limited in carrying out detailed instructions, she would not be significantly limited in carrying out simple instructions. *Id.* at 53. Likewise, vocational consultant Dwight Gilbert found that Gates had only moderate limitations in carrying out detailed instructions. *Id.* at 146. When she was discharged from the hospital after an altercation, her "[a]ttention, concentration, and memory [were] intact." *Id.* at 251.

Finally, although Dr. Sandusky noted that Gates had an IQ score of 69, she stated that "[b]ased on Ms. Gates intellectual functioning alone, she is considered to be able to function in a work environment. Dr. Sandusky did not have information regarding Gates psychological functioning. *Id.* at 297.

Although there is certainly some evidence showing limitations in understanding, remembering, and applying information, there is substantial evidence supporting the ALJ's finding of only a moderate limitation in this area. This Court will not re-weigh the evidence. Gates' ability to carry out household chores, the opinions of Dr. Baskin and Gilbert that Gates had only moderate limitations in carrying out detailed instructions and could follow simple instructions, and Dr. Sandusky's statement that based on Gates' intellectual functioning, she could perform in a work environment provide support for the ALJ's determination that Gates had a fair ability to understand, remember, or apply information. *See Salas v. Saul*, No. 4:18-cv-3607, 2020 WL 883272, at *3-5 (S.D. Tex. Feb. 24, 2020)

B. <u>Interacting with Others</u>

With respect to interacting with others, the ALJ noted that Gates testified she felt overwhelmed in large crowds and tended to avoid them. She also notes that Gates traveled to a family reunion via airplane in 2017 and was excited about the trip; however, Gates testified she did not leave the hotel. The ALJ also notes a 2016 altercation with her uncle that resulted in a homicide and suicide attempt, but her inpatient observation records show an unremarkable mental status exam, where

Gates was able to maintain good eye contact and was described as calm and cooperative. ECF No. 10 at 16.

At the hearing, Gates also testified that she left her job at a chicken plant because she kept getting into fights. ECF No. 10 at 35. She stated that she thought she was unable to work because of her anger issues and because she does not "like dealing with people." *Id.* at 35-36. She also stated that she is unable to go to the grocery store because she is overwhelmed by the people. *Id.* at 36. In the initial disability evaluation, Dr. Baskin opined that although Gates may be moderately limited in interacting with the general public, she would be able to ask questions and accept instructions. Dr. Baskin recommended a "non-interpersonally intensive work environment." *Id.* at 54. As above, the vocational consultant found only moderate limitations in interacting with the public and getting along with coworkers. *Id.* at 146. In completing a function report, Gates stated that her family upsets her and she does not go around them. *Id.* at 163 & 173.

After the altercation with her uncle, her hospital records indicate she was "interacting fairly well, participating in groups." *Id.* at 251. These records also indicate that other family members had problems with this uncle as well. *Id.* A February 23, 2017 note indicates that after trying a new medication for paranoia, she was feeling better and had not had any anger outbursts or agitation. *Id.* at 265. Gates argues that her difficulties with crowds and the altercation with her uncle, combined with other evidence, demonstrates that there is not substantial evidence supporting the ALJ's determination of only moderate limitation in this area.

Although Gates may have some limitations in this area, the ALJ is responsible for weighing this evidence. Few details are provided about the disciplinary problems Gates had in school and during her short tenure at the chicken plant. Given the opinions of Dr. Baskin and the vocational consultant that she had only moderate limitations in interacting with others, the ALJ's finding that Gates had only a moderate limitation in interacting with others is supported by substantial evidence.

## IV. Recommendation

Based on the above analysis, the undersigned recommends that Gates' Motion for Summary Judgment be denied, the Commissioner's Motion to Affirm be granted, and the case dismissed.

## V. Notice of the Right to Object

Pursuant to Local Uniform Civil Rule 72(a)(3),

> After service of a copy of the magistrate judge's report and recommendations, each party has fourteen days to serve and file written objections to the report and recommendations. A party must file objections with the clerk of court and serve them upon the other parties and submit them to the assigned district judge. Within seven days of service of the objection, the opposing party or parties must either serve and file a response or notify the district judge that they do not intend to respond to the objection.

L.U. Civ. R. 72(a)(3); *see* 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. The District Judge need not consider frivolous, conclusive, or general objections. A party who fails to file written

11

objections to the proposed findings, conclusions, and recommendations within fourteen days of being served a copy shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED,** this the 21st day of January, 2021.

*s/ John C. Gargiulo*
JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE